UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. CR 21-146 (ADM)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>THOMAS WILDER MOSELEY, )<br>)<br>Defendant. ) | **DEFENDANT'S POSITION WITH RESPECT TO SENTENCING** |

Defendant Thomas Wilder Moseley, through undersigned counsel, through undersigned counsel, hereby submits his position with respect to his sentencing. There is no dispute based on the plea agreement or the presentence investigation report (PSR) that Mr. Moseley's advisory sentencing guidelines range for possession of a firearm as a drug user with no prior criminal convictions is 18-24 months imprisonment. The appropriate sentence in this case is probation based on a consideration of Mr. Moseley's background, his personal character, his lack of criminal history, his lack of dangerousness, the circumstances giving rise to the offense, Mr. Moseley's strong connections and support within the community, and his amenability to rehabilitation.

## FACTUAL BACKGROUND

Mr. Mosely is 30 years old. His first contact with the criminal justice system was in 2020, consisting of a series of arrests from protest-related activity which also led the charge in the instant case.

Mr. Moseley was born in Seoul, South Korea. (PSR, para. 46). He was adopted at the age of three months by white very religious Catholic parents who live in the upper peninsula in rural Michigan in a town that was overwhelmingly white. (Id. paras. 46-48, 53-54). Mr. Moseley's adoptive parents were and remain loving and committed to their parenting responsibilities, but they had no knowledge of or connection with Mr. Moseley's cultural background and their response to the racial differences and related problems was to treat them as if they did not exist. (Id.; Letters of Mandy Moseley). From early childhood through his college years, Mr. Moseley experienced racist incidents at school and even from his own family including his uncle and grandfather. (PSR, paras. 47, 49; Letter of Sebastian van Hoek).

From Mr. Moseley's childhood through the present, he has always exhibited deep compassion and a commitment to helping others. (PSR, paras. 49-51, 53; all support letters). Mr. Moseley has displayed his compassion and commitment to help others through volunteer work from childhood through the present, including helping seniors, homeless people helping vulnerable animals, and his activism in response to police violence which has included not only physically protesting but working with and establishing personal connections with numerous families of victims of police killings. (Id.) During high school, Mr. Moseley volunteered a Jericho House helping seniors, and helped the local food pantry. (Parents' letter). His volunteer work for a homeless program through his church inspired his parents to volunteer. (Id.)  Mr. Moseley continued his

volunteer work for the homeless as an adult. (Letter of Bonsall).  Mr. Moseley first became involved in activism in response to police violence when living in rural Michigan, where he publicly and courageously took principled positions at odds with his community. (Letter of Bonsall). Through his work with families of victims of police violence and in the protest movement, Mr. Moseley has been available to numerous people for emotional support and has been recognized as a community leader. (Letters of Dhaniram, Ross, Thiel, Pepper, Bonsall, Chisesi, Mezara, Fox, de Guzman, Handy-Jones, Smykalski, Conde, Mika, Goligoski/Trentman, Chester, Price, Johnson).

Mr. Moseley recognized at the beginning of college that he needed help for mental issues, and sought help. (Letter of Mandy Moseley). His mother, however, stated that he did not need therapy and threw his medications away. (Id.) Mr. Moseley again sought help from a therapist in 2019 and continues to receive treatment for diagnoses of anxiety and depression. (PSR, para. 57).

At the time of the incident leading to the charges in the instant case, Mr. Moseley was emotionally devastated from revelations of marital infidelity of his wife of many years with whom he believed he had an unbreakable bond. (PSR, paras. 19, 51, 53; Letters of Mandy Moseley and Thomas Moseley). It was during this brief time period that Mr. Moseley turned to using drugs in response to the emotional trauma. (PSR para. 59; Letter of Thomas Moseley). Since Mr. Moseley's arrest and release in the instant case, he has not used drugs. (PSR para. 59).

Mr. Moseley moved to the Twin Cities with his then wife in the summary of July, 2020. His activism seemed to make the Twin Cities a fitting home in light of the protest movement in response to the murder of George Floyd and the large activist community that was not at all present in northern Michigan. (PSR, para. 50). Mr. Moseley did indeed engage in a great deal of constructive activism work, while also acknowledging that he made mistakes in participating a protest in August, 2020 where there was damage to property and having a gun at a protest at the Hennepin County Government Center on October 15, 2015 which led to the charge in the instant case. (Support letters; Letter of Thomas Moseley).

Mr. Moseley has never engaged in any violence, and did not use or plan to use his firearms for violence or other criminal activity. He acquired the firearms in response to the tense and fearful atmosphere existing in 2020 which included a widespread fear of an apocalypse due to the COVID pandemic, and acts of armed violence being perpetrated against Black Lives Matter protesters. (PSR, paras. 19-20; Letter of Thomas Moseley). Mr. Moseley had purchased the firearms legally, obtained a permit to carry, and took safety training and precautions. (Id.) He was keeping multiple firearms in his vehicle at the time of his arrest because after moving out of his home after breaking up with his wife, Mr. Moseley was staying in the home of a friend who had a teenage son, he did not want the guns in proximity to the child, and did not know of another place to keep them. (PSR para. 19; Letter of Thomas Moseley).

When Mr. Moseley was arrested at the Hennepin County Government Center and found with a gun, he had been carrying the gun as he usually did, was called by a friend to come to the protest, and did not stop to think about restrictions on possessing a gun at a courthouse. (PSR para. 19-20; Letter of Thomas Moseley). Mr. Moseley was otherwise engaging in lawful and peaceful protest, but was arrested due to allegations arising out of a protest in August, 2020. (PSR para. 20; Letter of Thomas Moseley).

During his pretrial release, Mr. Moseley has remained drug free and law-abiding. He initially struggled to find stable employment but eventually found a regular job at a Holiday gas station and now also works overnight at group home for elderly and disabled people. (PSR para. 62; Letter of Thomas Moseley). Mr. Moseley plans to finish his bachelor's degree and eventually go to law school. (Letter of Thomas Moseley).

## DISCUSSION

Mr. Moseley's overwhelmingly positive and law-abiding life, the personal hardships throughout his life that influenced his offense but he since has effectively worked through, and his community support as well as the support he provides in the community all downward variance from the applicable advisory sentencing guidelines and a sentence that allows him to remain in the community based on the applicable "reasonableness" factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a) provides that "The court shall impose a sentence sufficient, <u>but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection." After calculating

the guidelines, a district court "may not presume that the Guidelines range is reasonable" but must make an independent assessment of the 18 U.S.C. § 3553(a) factors based on the individual facts of the case. Gall v. United States, 128 S.Ct. 586, 597 (2007). In Mr. Moseley's case, a prison sentence is a greater sentence than necessary to comply with the applicable statutory factors.

Section 3553(a) sets forth the following factors that must be considered by a sentencing court in imposing every sentence:

> *(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;*

Mr. Moseley accepts responsibility and greatly regrets that he possessed firearms while being a drug user.  The offense arose out a brief episode in Mr. Moseley's that was an aberration from the life he led before and since. Mr. Moseley should not have possessed weapons given the condition that he was in at the time, but he had previously acquired them legally and for legal and legitimate purposes. He did not use firearms to harm anyone or threaten anyone with any harm, or to advance any criminal objectives.

Mr. Moseley's firearms were found in circumstances that did not reflect bad intentions on his part. He was arrested at a protest at the Hennepin County Government Center while carrying a concealed pistol because he normally carried the pistol and was not aware it was illegal to possess a gun in that location. Mr. Moseley was engaged in his constitutional right to lawful protest at the time and not doing anything illegal. The protest was in the public area of the Government Center, and Mr. Moseley never brought the gun

or attempted to bring the gun to secure areas within the courthouse. Mr. Moseley kept his other firearms in his vehicle because the only place he had to live after splitting with his wife was a home where a child was present.

Mr. Moseley, who is 30 years old, had never been in trouble with the law prior to the incidents related to this case in October, 2020. There were unique circumstances which led to his conduct, which were not otherwise present in Mr. Moseley's life. These circumstances include the great deal of social tension in the aftermath of the murder of George Floyd which particularly affected Mr. Moseley due to his extremely deep social consciousness and his prior activism in response to police killings. This led Mr. Moseley to engage in more aggressive action than he would otherwise engage in. The other circumstance was that Mr. Moseley had discovered that his wife and life-partner of many years was cheating on him. This led him to deal with greater trauma and anger than he was accustomed to, and to temporarily turn to drugs.

Mr. Moseley's offense does not reflect - and is indeed contradictory to his 29 years preceding the offense, and his one year since the offense. Mr. Moseley's entire life has been about concern for others, and providing help for other people. He responded to the racism that he suffered throughout his childhood and early adulthood by showing sympathy and engaging in acts of support for other victims of injustice. Mr. Moseley has defined his life by helping those in need, including the homeless, the elderly, vulnerable

animals, and victims of police violence. His life cannot be defined by several incidents over a short period of time when Mr. Moseley was facing his most difficult struggles.

> (2) *the need for the sentence imposed–*
>
> > (A) *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*
> >
> > (B) *to afford adequate deterrence to criminal conduct;*
> >
> > (C) *to protect the public from further crimes of the defendant; and*
> >
> > (D) *to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

The fact of a felony conviction and Mr. Moseley's prior time of incarceration in state and federal custody is sufficient to reflect the seriousness the offense, promote respect for the law, and provide just punishment. There are no victims in this case. Mr. Moseley did not cause actual harm and did not intend harm. Given the conduct at issue and his lack of criminal history, sufficient punishment has already been imposed on Mr. Moseley. The large community that Mr. Moseley is part of has taken note of the suffering he has already experienced in the federal court system. Additional incarceration time is not necessary to deter people from committing similar offenses.

Mr. Moseley has already suffered punishment which will deter him from committing any future crimes, and terms of supervision as part of probation will be sufficient to ensure that Mr. Moseley continues to lead a positive life as he did before and

since the offense. As stated, the offense was an aberration, and there is no basis to conclude Mr. Moseley is likely to commit any other crimes. His positive conduct since the offense demonstrates that Mr. Moseley has learned from his mistakes and will continue to be law abiding as he was for the first 29 years of his life. Mr. Moseley is far more likely to respond positively to a sentence that permits him to remain in the community and continue on his positive path than the disruption, negative influence and harm to his life that will occur from being sent to prison.

Education, vocational training, and mental health care are important to Mr. Moseley and can best be attained in the community rather than in prison. Mr. Moseley can continue with his therapy in the community, and carry out his plans to complete his college education and then proceed further with graduate or professional school.

> (3)    *the kinds of sentences available;*

Although the advisory sentencing guidelines recommend a term of imprisonment, the Court clearly has discretion to impose a probationary sentence. For the reasons stated above, it is preferable for Mr. Moseley to receive a sentence that permits him to continue on his positive path.

> (4)    *the kinds of sentence and the sentencing range established for–*
>
> > (A)    *the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .*

See above.

(5)   *any pertinent policy statement under the Sentencing Guidelines*

No policy statements are known that are specifically pertinent to this case.

(6)   *the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and*

The defense is unaware of cases that are factually similar to the instance case in terms of the offense conduct and circumstances, and background of the defendant. Mr. Moseley's circumstances are sufficiently unique so that a probationary sentence would not present an unwarranted disparity.

(7)   *the need to provide restitution to any victims of the offense.*

This factor is inapplicable because there are no victims and therefore no restitution.

## CONCLUSION

Mr. Moseley respectfully submits that the combination of factors, including that the offense was a sharp aberration from his normal conduct, the limited harm caused, Mr. Moseley's substantial community support, and his substantial commitment and contribution to the community all warrant a probationary sentence.

Dated:  November 19, 2021              LAW OFFICE OF JORDAN S. KUSHNER

                                       By  s/Jordan S. Kushner
                                           Jordan S. Kushner, ID 219307
                                           Attorney for Defendant
                                           431 South 7th Street, Suite 2446
                                           Minneapolis, Minnesota  55415
                                           (612) 288-0545